UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-09543-RGK-RAO | Date | September 18, 2026 |
| Title | **MARCELO GOMEZ v. DURFEE, INC.** | | |

| | |
|---|---|
| Present: The Honorable | GARY KLAUSNER, UNITED STATES DISTRICT JUDGE |
| Joseph Remigio (not present) | Not Reported |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None | None |

**Proceedings:** **IN CHAMBERS — COURT ORDER**

The Complaint filed in this action asserts a claim for injunctive relief arising out of an alleged violation of the Americans with Disabilities Act ("ADA") and one or more "construction-related accessability claims" under California law, including a claim for damages pursuant to California's Unruh Act. Because the Court possesses only supplemental jurisdiction over the Unruh Act and any other state law claims, and in light of California's statutory efforts to curtail such claims, the Court ordered plaintiff to show cause in writing why the Court should exercise supplemental jurisdiction over the Unruh Act and any other state law claims asserted in the Complaint. *See* 28 U.S.C. § 1367(c). The Court has reviewed the Response filed by plaintiff and plaintiff's counsel to the Court's Order to Show Cause.

## I. <u>ADA and Unruh Act Claims</u>

The ADA prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Under the ADA, "damages are not recoverable . . . only injunctive relief is available." *Wander v. Kaus*, 304 F.3d 856, 858 (9th Cir. 2002) (citing 42 U.S.C. § 12188(a)(1)).

The Unruh Act provides: "All persons within the jurisdiction of [California] are free and equal, and no matter what their . . . disability . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b). The Unruh Act also provides that a violation of the ADA constitutes a violation of § 51 of the Unruh Act. Cal. Civ. Code § 51(f). Unlike the ADA, the Unruh Act allows for recovery of monetary damages. A plaintiff may recover actual damages for each and every offense "up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000)." Cal. Civ. Code § 52(a). "The

litigant need not prove she suffered actual damages to recover the independent statutory damages of $4,000." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 731 (9th Cir. 2007).

## II. <u>California's Limitations on the Filing of Construction-Related Accessibility Claims</u>

"In 2012, in an attempt to deter baseless claims and vexatious litigation, California adopted heightened pleading requirements for disability discrimination lawsuits under the Unruh Act." *Velez v. Il Fornaio (America) Corp.*, CV 3:18-1840 CAB (MDD), 2018 WL 6446169, at *6 (S.D. Cal. Dec. 10, 2018), *rev'd on other grounds*, 808 F. App'x 581 (2020). These heightened pleading requirements apply to actions alleging a "construction-related accessibility claim," which California law defines as "any civil claim in a civil action with respect to a place of public accommodation, including but not limited to, a claim brought under Section 51, 54, 54.1, or 55, based wholly or in part on an alleged violation of any construction-related accessibility standard." Cal. Civ. Code § 55.52(a)(1). California's heightened pleading standard for construction-related accessibility claims require a plaintiff to include specific facts concerning the plaintiff's claim, including the specific barriers encountered or how the plaintiff was deterred and each date on which the plaintiff encountered each barrier or was deterred. *See* Cal. Civ. Proc. Code § 425.50(a). California law requires plaintiffs to verify their complaints alleging construction-related accessibility claims. *See* Cal. Civ. Proc. Code § 425.50(b)(1). A complaint alleging construction-related accessibility claims that is not verified is subject to a motion to strike. *Id*.

When California continued to experience large numbers of these actions, California imposed additional limitations on "high-frequency litigants." These additional restrictions became effective on October 15, 2015. Under California law, a "high-frequency litigant" is defined as:

> A plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation.

Cal. Civ. Proc. Code § 425.55(b)(1). The definition of high-frequency litigant also extends to attorneys. *See* Cal. Civ. Proc. Code § 425.55(b)(2). In support of its imposition of additional requirements on high-frequency litigants, the California Legislature found and declared:

> According to information from the California Commission on Disability Access, more than one-half, or 54 percent, of all construction-related accessibility complaints filed between 2012 and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:26-cv-09543-RGK-RAO | Date | September 18, 2026 |
| Title | **MARCELO GOMEZ v. DURFEE, INC.** | | |

> 2014 were filed by two law firms. Forty-six percent of all complaints were filed by a total of 14 parties. Therefore, a very small number of plaintiffs have filed a disproportionately large number of the construction-related accessibility claims in the state, from 70 to 300 lawsuits each year. Moreover, these lawsuits are frequently filed against small businesses on the basis of boilerplate complaints, apparently seeking quick cash settlements rather than correction of the accessibility violation. This practice unfairly taints the reputation of other innocent disabled consumers who are merely trying to go about their daily lives accessing public accommodations as they are entitled to have full and equal access under the state's Unruh Civil Rights Act (Section 51 of the Civil Code) and the federal Americans with Disability Act of 1990 . . . .

Cal. Civ. Proc. Code § 425.55(a)(2). In response to these "special and unique circumstances," Cal. Civ. Proc. Code § 425.55(3), California imposed a "high-frequency litigant fee" requiring high-frequency litigants to pay a $1,000 filing fee at the time of the filing of the initial complaint in addition to the standard filing fees. Cal. Gov't Code § 70616.5. California law also requires complaints filed by high-frequency litigants to allege certain additional facts, including whether the action is filed by, or on behalf of, a high-frequency litigant, the number of construction-related accessibility claims filed by the high-frequency litigant in the preceding 12 months, the high-frequency litigant plaintiff's reason for being in the geographic area of the defendant's business, and the reason why the high-frequency litigant plaintiff desired to access the defendant's business. *See* Cal. Civ. Proc. Code § 425.50(a)(4)(A).

## III. Supplemental Jurisdiction

In an action over which a district court possesses original jurisdiction, that court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Even if supplemental jurisdiction exists, district courts have discretion to decline to exercise supplemental jurisdiction:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The Supreme Court has described 28 U.S.C. § 1367(c) as a "codification" of the principles of "'economy, convenience, fairness, and comity'" that underlie the Supreme Court's earlier jurisprudence concerning pendent jurisdiction. *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172-73, 118 S. Ct. 523, 533, 139 L. Ed. 2d 525 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357, 108 S. Ct. 614, 623, 98 L. Ed. 2d 720 (1988)); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 1139, 16 L. Ed. 2d 218 (1966) ("It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

District courts may decline to exercise jurisdiction over supplemental state law claims "[d]epending on a host of factors" including "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims." *City of Chicago*, 522 U.S. at 173, 118 S. Ct. at 534, 139 L. Ed. 2d 525. The supplemental jurisdiction statute "reflects the understanding that, when deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *Id.* (quoting *Cohill*, 484 U.S. at 350, 108 S. Ct. at 619, 98 L. Ed. 2d 720).

The Ninth Circuit does not require an "explanation for a district court's reasons [for declining supplemental jurisdiction] when the district court acts under" 28 U.S.C. §§ 1367(c)(1)-(3), *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 478 (9th Cir. 1998), but does require a district court to "articulate why the circumstances of the case are exceptional in addition to inquiring whether the balance of the *Gibbs* values provide compelling reasons for declining jurisdiction in such circumstances." *Executive Software N. Am. Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal.*, 24 F.3d 1545, 1558 (9th Cir. 1994). According to the Ninth Circuit, this "inquiry is not particularly burdensome." *Id.* When declining to exercise supplemental

jurisdiction under 28 U.S.C. § 1367(c)(4), "the court must identify the predicate that triggers the applicability of the category (the exceptional circumstances), and then determine whether, in its judgment, the underlying *Gibbs* values are best served by declining jurisdiction in the particular case (the compelling reasons)." *Id.*

**IV. <u>The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's Construction-Related Accessibility Claim(s)</u>**

Because California's heightened pleading standards and increased filing fees do not apply in federal court, plaintiffs can circumvent the restrictions California has imposed on Unruh Act and other claims alleging construction-related accessibility claims simply by relying on § 1367(a)'s grant of supplemental jurisdiction to file their Unruh Act claims in federal court when they combine construction-related accessibility claims with an ADA claim for injunctive relief. The number of construction-related accessibility claims filed in the Central District has skyrocketed both numerically and as a percentage of total civil filings since California began its efforts to curtail the filing of such actions. According to statistics compiled by the Clerk's Office, in 2013, the first year in which California's initial limitations on such cases were in effect, there were 419 ADA cases filed in the Central District, which constituted 3% of the civil actions filed. Filings of such cases increased from 928 cases (7% of civil cases) in 2014, the year before the imposition of the additional $1,000 filing fee and additional pleading requirements for high-frequency litigants, to 1,386 cases (10% of civil cases) in 2016, the first full year of those requirements. Through 2020, the number and percentage of such cases filed in the Central District has increased in each year since California acted to limit the filings by high-frequency litigants, reaching 1,670 cases (12% of civil cases) in 2017, 2,720 cases (18% of civil cases) in 2018, 3,595 cases (24% of civil cases) in 2019, and 4,569 cases (28% of civil cases) in 2020. In 2021, there were 3,000 ADA cases filed in the Central District (22% of civil cases).

By enacting restrictions on the filing of construction-related accessibility claims, California has expressed a desire to limit the financial burdens California's businesses may face for claims for damages under the Unruh Act and other state law theories. By filing these actions in federal court, plaintiff has evaded these limits and sought a forum in which plaintiff can claim these state law damages in a manner inconsistent with the state law's requirements. As the Ninth Circuit has concluded, this situation presents"exceptional circumstances" for purposes of § 1367(c)(4):

> The district court's principal justification for declining supplemental jurisdiction was that the distinctive configuration of California-law rules—which pair a damages remedy with special procedural requirements aimed at limiting suits by high-frequency

> litigants—would be rendered ineffectual if the district court were to exercise supplemental jurisdiction. We hold that the district court did not abuse its discretion in concluding that, for this reason, this case presents "exceptional circumstances" within the meaning of § 1367(c)(4).

*Arroyo v. Rosas*, 19 F.4th 1202, 1211 (9th Cir. 2021); *id.* at 1212 n.6 ("[W]e note that the available date from the California Commission on Disability Access confirms the dramatic shift of disability-related cases from state to federal court. . . . [T]he Commission's data show that in 2015, more state complaints were received than federal complaints (1,240 state complaints versus 1,083 federal complaints), but by 2019, the number of state complaints had dropped so dramatically that the ratio of federal to state complaints was now more than 10:1 (311 state complaints versus 3,211 federal complaints)."); *id.* at 1213 ("[A]s the district court explained, Unruh Act plaintiffs have 'evaded these limits' by filing in a federal 'forum in which [they] can claim these state law damages in a manner inconsistent with the state law's requirements.' In short, the procedural strictures that California put in place have been rendered largely toothless, because they can now be readily evaded."); *id.* ("These circumstances are 'exceptional' in any meaningful sense of the term. And failing to recognize them as exceptional would improperly ignore the very substantial threat to federal-state comity that this overall situation presents." (citation omitted)); *id.* ("[T]he district court rested its decision squarely on the comity-based concerns that California's policy objectives in this area were being wholly thwarted and its courts were being deprived of their crucial role in carrying out the Legislature's reforms of the Unruh Act. The mechanism by which that frustration of California's goals occurred was the wholesale shifting of cases from state to federal court, and the district court therefore can hardly be faulted for noting the federal-court burdens that resulted as a collateral consequence. But that does not vitiate the district court's proper reliance on the exceptional comity-based concerns presented here.").

The Court therefore concludes that "exceptional circumstances" justify the Court's discretion to decline to exercise supplemental jurisdiction over plaintiff's Unruh Act and any other state law claims in this action under 28 U.S.C. § 1367(c)(4). Similarly, in conducting the required case-by-case analysis, the Court concludes at this early stage of the litigation that declining to exercise supplemental jurisdiction over plaintiff's Unruh Act and any other construction-related accessibility claim in these circumstances presents "compelling reasons" and supports the values of judicial economy, convenience, fairness, and comity. *See id.* at 1205; *see also Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1031 (S.D. Cal. 2017) ("As a high-frequency litigant, the Court finds it would be improper to allow Plaintiff to use federal court as an end-around to California's pleading requirements. Therefore, as a matter of comity, and in deference to California's substantial interest in discouraging unverified disability discrimination

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:26-cv-09543-RGK-RAO | Date | September 18, 2026 |
|---|---|---|---|
| Title | **MARCELO GOMEZ v. DURFEE, INC.** | | |

claims, the Court declines supplemental jurisdiction over Plaintiff's Unruh Act claim."); *see also Schutza*, 262 F. Supp. 3d at 1031 ("It is unclear what advantage—other than avoiding state-imposed pleading requirements— Plaintiff gains by being in federal court since his sole remedy under the ADA is injunctive relief, which is also available under the Unruh Act."). "Federal courts may properly take measures to discourage forum-shopping, and here, where Plaintiff has filed over one hundred disability discrimination cases, and settled more than fifty of them in a two-year period, the Court finds this to be a compelling reason to decline supplemental jurisdiction." *Id*. (citing *Hanna v. Plumer*, 380 U.S. 460, 467-68, 85 S. Ct. 1136, 1142, 14 L. Ed. 2d 8 (1965)).

One firm that has filed over 3,300 actions asserting construction-related accessibility claims in the Central District since 2016 admitted in its Responses to the Court's Order to Show Cause, that its filing of actions in federal court is done to avoid the "financial burden" of California's $1,000 high-frequency litigant fee. (*See* Docket No. 19 in Case No. CV 19-1874 PA (MRWx) at 7:1-5 ("[F]iling in state court would cause a 'high frequency litigant' . . . such as Plaintiff to incur an unreasonable amount of financial burden in the amount of $1,000. Such financial burden would prohibit Plaintiff from enforcing his right to bring a substantial claim against individuals and entities who have injured Plaintiff in his right provided by ADA and applicable state statutes.").) It is not, under the *Gibbs* factors, "fair" to defendants that plaintiffs may pursue construction-related accessibility claims in this Court while evading the limitations California has imposed on such claims. To allow federal courts to become an escape hatch allowing plaintiffs to pursue such claims—regardless of whether a particular plaintiff or the small number of law firms that frequently pursue these actions currently satisfies the definition of a "high-frequency litigant"—is also an affront to the comity between federal and state courts.

California's elected representatives, not this Court, have enacted laws restricting construction-related accessibility claims, and, as a result, dictated that these claims be treated differently than other actions. By merely recognizing that enterprising attorneys have evaded California's limitations on construction-related accessibility claims by filing these actions in federal court, this Court has not, as some plaintiff's counsel have suggested, engaged in a "calendar clearing exercise," acted out of "animus towards the case load of meritorious ADA and Unruh claims," or "discriminat[ed] against those with disabilities." Indeed, because many defendants voluntarily bring their places of public accommodation into compliance with ADA standards during the pendency of these actions, thereby mooting the claim for injunctive relief under the ADA, declining to exercise supplemental jurisdiction over the state law claims at the outset of the litigation preserves federal judicial resources for the consideration of federal claims, while still allowing plaintiffs to pursue their state law claims in state court.

Continuing to exercise supplemental jurisdiction in these extraordinary circumstances would unnecessarily force this Court to expend resources to resolve state law claims for relatively modest statutory damages and attorneys' fees even after the federal claim is moot, or to inefficiently decline to exercise supplemental jurisdiction at a later date under 28 U.S.C. § 1367(c)(3) once the parties and Court have spent months litigating those claims in this forum.[1/] Exercising the Court's discretion to decline supplemental jurisdiction does not deprive plaintiff of any remedies. Nor does it allow an ADA claim for injunctive relief to go unaddressed. The ADA claim remains pending in this Court, so the Court has not, as plaintiff's counsel has suggested, refused jurisdiction over a claim within its original jurisdiction to ease docket congestion. By declining to exercise supplemental jurisdiction, the Court is merely restoring the balance Congress struck when it enacted the ADA and provided a private right of action for injunctive relief and an award of attorneys' fees, but did not allow for the recovery of statutory damages.

The Court therefore concludes that "exceptional circumstances" and "compelling reasons" support the Court's decision to decline to exercise supplemental jurisdiction over plaintiff's Unruh Act and any other construction-related accessibility claim under 28 U.S.C. § 1367(c)(4).

## V. <u>Conclusion</u>

For the foregoing reasons, the Court, in its discretion, declines to exercise supplemental jurisdiction over plaintiff's Unruh Act and any other state claim set forth in the complaint. The Court therefore dismisses any such claims without prejudice. *See* 28 U.S.C. § 1367(c)(4).

**IT IS SO ORDERED.** JRE

---

[1/] It was just this sort of inefficiency that caused the Ninth Circuit to conclude in *Arroyo* that despite the existence of exceptional circumstances, that the district court erred in declining to exercise supplemental jurisdiction over the Unruh Act claim after it had already granted summary judgment on the ADA claim. *See Arroyo*, 19 F.4th at 1215-17.